**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| DHARMESH JEWAT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC., PEPSICO BEVERAGE SALES, LLC and WALMART, INC.<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Dharmesh Jewat ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants PepsiCo, Inc. and Pepsico Beverage Sales, LLC (collectively "Pepsi"), and Walmart, Inc. ("Walmart," collectively, "Defendants") for anticompetitive and unfair and deceptive business practices associated with the manufacture, marketing, and sale of Pepsi soft drinks (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon his information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**NATURE OF ACTION**

1. This is a class action against Defendants for anticompetitive and unfair and deceptive business practices associated with the marketing, manufacture and/or sale of Pepsi soft drinks, which includes providing Defendant Walmart with unfair price advantages to the disadvantage of other retailers of Pepsi's Products. Defendants entered into an agreement under which Pepsi raised the effective price to other retailers to ensure that Walmart would always have

anticompetitive price advantages that others did not have, and therefore that Walmart alone could offer. These advantages would never impair Walmart's own margin and would allow Walmart to sell at prices that other retailers of the Products could not match. The advantages provided under the agreement between Pepsi and Walmart include promotional payments, allowances, and services to Walmart that are not available to other retailers on proportionally equal terms. Because of Defendants' agreement and the resulting unfair promotions and price discrimination Plaintiff and class members could not compete with Walmart on price for retail customers, causing them to lose significant business. Defendants' agreement violates the Sherman Act. Further, the agreement created an artificial competitive advantage for Walmart exclusively, done in this manner, which violates the Robinson-Patman Act as well as state law.

2. Plaintiff brings his claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of both federal and state law.

## PARTIES

3. Plaintiff Dharmesh Jewat is, and at all times relevant to this action has been, a resident of Woodhaven, New York and a citizen of New York. In or about June 2025, Mr. Jewat purchased Pepsi from a local vendor that was not Walmart. The Product Mr. Jewat purchased was more expensive than the Product at Walmart due to the unfair price advantage given to them by Pepsi. If not for Defendants' unfair and anti-competitive practices, Mr. Jewat would have paid significantly less for the Product.

4. Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business at 700 Anderson Hill Road, Purchase, New York 10577. Pepsi markets and distributes the Products throughout the United States. Pepsi sells its products to consumers on websites and

through retail stores nationwide. Pepsi owns or controls multiple iconic beverage and food brands worth over $1 billion, including Pepsi-Cola, Frito Law, Mountain Dew, Starbucks (bottled products, under license), Gatorade, and Aquafina. In 2023, Pepsi reported global net revenues of over $91 billion.

5. Defendant Pepsico Beverage Sales, Inc. is a wholly-owned subsidiary of Defendant PepsiCo, Inc. It is a Delaware company with its principal place of business at 700 Anderson Hill Road, Purchase, New York, 10577. On information and belief, it is the successor to the Pepsi Beverages Company, which was formed in 2010 as a wholly-owned subsidiary of PepsiCo, Inc. following PepsiCo's acquisition of The Pepsi Bottling Group, Inc. and PepsiAmericas, Inc., which had previously been independent Pepsi bottlers.

6. Defendant Walmart is the largest company in the world by revenue and operates more retail stores in the United States than any other retailer. Walmart is headquartered in Bentonville, Arkansas.

7. Defendants acted to perpetrate the acts described herein. At all times relevant to the allegations in this matter, Defendants acted with the knowledge regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the conduct alleged violates the Sherman Act, 15 U.S.C. §1, and the Robinson-Patman Act, 15 U.S.C. § 13.

9. This Court also has supplemental jurisdiction under 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from a Defendant.

10. This Court has personal jurisdiction over Defendants because each Defendant conducts substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District. Further, Defendant Walmart resides in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because each Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District and because Defendant Walmart resides in this District.

## COMMON FACTUAL ALLEGATIONS

### I. Defendants' Business Activities

12. The manufacture and sale of non-alcoholic soft drinks in the United States is a $150 billion industry. There are two major categories of non-alcoholic soft drinks: carbonated soft drinks and non-carbonated soft drinks, which includes beverages such as energy drinks, juice, sports drinks or "isotonics," dairy or dairy substitute drinks, tea, coffee, and bottled still water.

13. Defendant Pepsi is one of the largest manufacturers and marketers of soft drinks in the United States. Pepsi is organized into seven divisions, including PepsiCo Beverages North America ("PBNA"). PBNA operates Pepsi's soft drink business in the United States and Canada. In 2023, PBNA generated $27.6 billion in revenue. Pepsi distributes its soft drinks to retailers through its bottler network, which comprises Defendant PepsiCo, Inc.'s wholly owned bottling subsidiary, Defendant Pepsico Beverage Sales, Inc., and several dozen franchise bottlers. Pepsi directly controls the wholesale pricing provided to its retailer customers by its wholly owned bottler subsidiaries.

14. The carbonated soft drink market is highly concentrated. Just three producers (The Coca-Cola Company, Pepsi and Keurig Dr. Pepper Inc.) account for approximately 93% of U.S. carbonated soft drinks.

15. Defendant Pepsi's customers include retailers in several channels, such as grocery stores, drug stores, convenience stores, discount/dollar stores, mass merchandisers, and membership stores. Retailers purchase Pepsi products from Pepsi and its bottlers and then re-sell those products to consumers. Retailers within each channel compete with one another. Retailers in one channel also often compete with retailers in other channels in the sale of soft drinks.

16. Pepsi's brand recognition is universal. Many food and beverage retailers consider Pepsi's soft drinks important to carry. Failing to carry Pepsi's soft drinks can put them at a competitive disadvantage to retailers that do carry Pepsi products. Pepsi distributes consumer products to retailers throughout the United States, who then sell the products to consumers.

17. Pepsi's products and brands include Pepsi-Cola, Mountain Dew, Gatorade, and Aquafina, among others.

18. While Pepsi's brand still remains a household name, sales have decreased 32% between 2010 and 2023, and it has fallen behind Dr. Pepper, the flagship soft drink of Keurig Dr. Pepper.

19. Defendant Walmart is Pepsi's largest customer. Walmart (including Sam's Club) represents approximately 11% of Pepsi's total net revenue. In North America, Walmart represents approximately 17% of Pepsi's total net revenue.

20. As Pepsi's largest customer and as the leading retail company, Walmart uses its leverage to enter into supply agreements directly with manufacturers, including Pepsi. To keep

Walmart happy, Pepsi provides Walmart with a slew of promotional payments, allowances, and services, benefits not provided to Walmart's competitors on proportionately equal terms.

21. Nor was Walmart's agreement with Pepsi unique in Walmart's history. In 2021, Walmart agreed with Energizer, the leading producer of consumer batteries, to impose a targeted retail price increase to prevent another direct customers from selling Energizer batteries below Walmart's retail price. Because of its towering market power in retail, even consumer brands that may be at or near monopoly power (as Energizer is) cannot forgo distribution through Walmart. Consequently, Walmart can and does demand that its suppliers price their branded wares ***to others*** such that Walmart can have the lowest price in the marketplace, without having to sacrifice its own margin to achieve this price advantage. That is, Walmart uses its market power to ensure that some branded products cost more everywhere else.

## II. Pepsi Provides an Unfair and Competitive Advantage to Walmart

22. As Pepsi's largest source of sales and revenue, Walmart regularly transacts with Pepsi for the sale of Pepsi products. These transactions include the sale of Pepsi products as well as promotional deals.

23. Pepsi provides Walmart with promotional payments and allowances intended to promote the resale of Pepsi's soft drinks. These payments and allowances from Pepsi are not available to competing retailers and are exclusive to Walmart.

24. Pepsi provides special deals to favored retailers. Discounts like those Pepsi provides to Walmart are one of the reasons why independent grocers struggle to survive and food prices are high.[1]

---

[1] *See* Zephyr Teachout, New York City Has the Power to Bring Down Grocery Prices. All Cities Do., New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/opinion/nyc-grocery-prices.html?smid=nytcore-ios-share&referringSource=articleShare.

25. These payments and allowances to Walmart are made in connection with various promotions. Such promotions include eye-catching advertising displays, multimedia advertising, and advantaged in-store placement relative to other brands and items in the store. Such displays may include dump bins (freestanding container where customers can easily grab loose items), inline displays (displays integrated directly onto the regular store shelves, highlighting specific products within the aisle), endcap displays (located at the end of aisles, these are highly visible and often used for showcasing new products or special promotions), gondola displays (shelving units that allow for displaying a variety of products across multiple levels), point-of-purchase displays (positioned to capture the attention of customers near a point of purchase), casestacker displays (designed to stack multiple cases of a product on top of each other, ideal for bulk items), shelf talkers (small signage attached to shelves to highlight promotions or product details), floor displays (free-standing displays that sit directly on the floor), and pallet displays (a large platform built on a pallet, used to showcase large quantities of a single product). An example of one such display can be seen below:

//

//

//

//

//

//

//

//

//

//

//

//

//




**Figure 1**

26. In exchange for these payments and allowances and to support the resale of Pepsi's soft drinks, Walmart will typically feature Pepsi's soft drinks in its stores with flashy displays and advertisements, and better placement. These promotional services and facilities have a measurable effect of driving the resale of Pepsi's soft drinks to consumers at Walmart stores.

27. However, the payments and allowances by Pepsi to Walmart go beyond display, advertisement, and placement benefits. To ensure that Walmart remains their leading retailer, Pepsi provides Walmart with promotional payments and allowances beyond the advertisements and other displays in Walmart stores. These payments and allowances are exclusive to Walmart and are not available to other retailers, even major grocery chains and other big box retailers. As such, Pepsi cannot make the same promotional payments and allowances available to all other retailers on proportionately equal terms.

28. Notwithstanding the above, Pepsi still goes beyond providing benefits to Walmart disproportionately. Pepsi sells its products to Walmart at a discounted price in order to give them a competitive advantage against other retailers. This advantage becomes evident when viewing Walmart's prices of Pepsi's Product relative to other competitors and vendors.

29. On July 1, 2025, the price of a Two-Liter Pepsi Soda was $2.59 at a Lynn, MA Walmart location.




**Figure 2**

30. The price of a Two-Liter Pepsi Wild Cherry Soda was $2.20 at a Lynn, MA Walmart location.




**Figure 3**

31. The price of a Two-Liter Diet Pepsi Soda was $2.50 at a Lynn, MA Walmart location.




**Figure 4**

32. The prices listed on the Lynn, MA Walmart website are in stark contrast to the prices of Two-Liter Pepsi Sodas at other surrounding stores, including Michael G's Handcrafted Italian and other large retailers.

33. At a nearby Walgreens located at 1010 Broadway, Chelsea, MA 02150, the prices of a Two-Liter Pepsi Soda, Two-Liter Pepsi Wild Cherry Soda, and Two-Liter Diet Pepsi Soda are each $3.59.




**Figure 5**

34. One of Pepsi's biggest retailers, 7-Eleven, has a nearby location at 188 Chelsea St, Everett, MA 02149. Here, the prices of a Two-Liter Pepsi Soda, Two-Liter Pepsi Wild Cherry Soda, and Two-Liter Diet Pepsi Soda are each $3.69.

35. Two-Liter Pepsi Sodas and Two-Liter Diet Pepsi Sodas are also sold at CVS, which has a nearby location at 1010 Revere Beach Pkwy, Chelsea, MA 02150. Here, the price of a Two-Liter Pepsi Soda and Two-Liter Diet Pepsi Soda is $3.69.




Figure 8

36. Compared to the price of a Two-Liter Pepsi Soda at Walgreens, the price of the same product at Walmart is up to 39% less. When compared to 7-Eleven and CVS, the difference only becomes more evident. A Two-Liter Pepsi Soda at Walmart becomes 40% cheaper when compared to 7-Eleven and CVS.

37. A May 6, 2025, purchase order for the Products at Plaintiff's store shows that Plaintiff purchased a variety of Two-Liter Pepsi Sodas from Pepsi. Plaintiff paid $43.90 for 16 bottles of Two-Liter Pepsi Sodas and $43.90 for 16 bottles of Two-Liter Diet Pepsi Sodas. This comes to a per-unit cost of $2.74 per bottle.

**Figure 7**

38. The per-unit cost of $2.74 per bottle for Pepsi's Products paid by Plaintiff to supply his store is higher than the resale price at Walmart. Pepsi is clearly supplying Walmart with Two-Liter Pepsi Sodas for less than $2.59, Two-Liter Diet Pepsi Sodas for less than $2.50, and Two-Liter Pepsi Wild Cherry Sodas for less than $2.20, inclusive of exclusive payments and allowances that are made only to Walmart.

39. Pepsi is therefore affording Walmart lower prices than other surrounding stores and large retailers. As such, this raises the prices to each other retailer and creates a competitive advantage for Walmart at the cost of other stores and retailers.

40. These payments and allowances thus allow Walmart to offer prices at levels that other retailers, including Plaintiff, can never hope to match or beat.

41. By creating a competitive advantage for one retailer over others, Pepsi places an unfair and oppressive burden on other stores and retailers who are not provided the same advantages as Walmart. Plaintiff and Class Members must then either charge an artificially inflated price, which reduces their sales, or not purchase any of Pepsi's Products. Either decision

places Plaintiff and Class Members at a significant competitive disadvantage. These lost profits represent a direct monetary injury to each individual retailer.

42. Plaintiff and Class Members thus suffer tangible harm through the artificially inflated prices of the Product created by Pepsi's practices.

43. The Products are a thing in interstate commerce.

44. By engaging in such a practice with Walmart, Pepsi has violated various state unfair and deceptive practices laws including, but not limited to, state anticompetition laws.

**A. Higher Pepsi Prices Impacted the Entire Market**

45. In raising wholesale prices for everyone but Walmart, Pepsi initiated a series of price hikes that impacted the entire market.

46. As shown in Figure 9, soda prices increased more than a half dozen times from 2020 to 2025. Had Walmart had to discount to maintain its price advantage over rivals for Pepsi, the discounts would have disciplined the closely related prices for the two competing producers. Because Walmart could maintain its preferred pricing while Pepsi increased the effective wholesale prices to all others, instead the entire market increased.

//

//

//

//

//

//

//

//




**Figure 9**

**III. Agreement In Restraint of Trade**

47. The Sherman Act makes unlawful any agreement in restraint of trade. 15 U.S.C. §1. Agreements in restraint of trade are either *per se* unlawful, or subject to the "rule of reason." Defendants' conduct herein is vertical price fixing, or "resale price maintenance," which is subject to a rule of reason analysis.

48. Defendant Pepsi and Defendant Walmart agreed that Pepsi would increase effective prices (net of discounts and promotional considerations) to other retailers such that Walmart would have a cost advantage and could then price below all its retail competitors without reducing its own margin. Walmart was able to secure this agreement by the exercise of market power.

**A. Relevant Product Markets**

49. The products at issue here complete in the product market for carbonated soft drinks. Carbonated soft drinks is a separate market recognized by both producers and retailers. Customers do not view other beverages as close substitutes for carbonated soft drinks and will only substitute other products for carbonated soft drinks under circumstances that will not allow a substitute to discipline the price of carbonated soft drinks.

50. The carbonates soft drink market is characterized by high barriers to entry because distribution at scale is highly constrained by store shelf space and further constrained by market realities whereby the three existing large producers have exclusive rights to shelf space and discount calendars. New entry is foreclosed by the difficulty and massive cost of generating name recognition, and the problems of securing widespread distribution.

51. Defendants' successful implementation of its agreement shows that the market for carbonated soft drinks is one in which it is possible to exercise market power. If consumers substituted away from Pepsi products upon a small but significant, non-transitory increase in price (what antitrust economists call a "SSNIP"), then the increase would have reduced the Defendants' sales so much that the increase would be unprofitable. That this did not happen shows that consumers did not, and will not, substitute away from Pepsi in response to an increase with enough frequency to make the increase unprofitable, allowing one or more dominant firms to exercise market power.

52. Walmart competes in the grocery market. It is a brand name maintaining a location within ten miles of more than ninety percent of American consumers. Walmart's brand is widely recognized and Walmart has positioned the brand as the lowest cost place to get many grocery items, including carbonated soft drinks.

**B. Relevant Geographic Market**

53. The relevant geographic market is the United States. Carbonated soft drinks are shelf-stable and can be shipped in a way that will tend to arbitrage significant wholesale price differences.

54. Walmart also competes in a national market against nationwide grocery chains. Around 30% of the grocery store market in the United States belongs to Walmart.[2] In 43 metropolitan areas in the United States, Walmart has 50-69% of the grocery market share. In a further five metropolitan areas in the United States, Walmart has more than 70% of the grocery market share.[3]

**C. Market Power**

55. Defendant Pepsi has market power in the relevant market. The soft drink industry is highly concentrated; three makers have over 90% market share. The Herfindahl-Hirschman Index ("HHI")[4] is no less than 2700 and possibly exceeds 3000, indicating high concentration. Pepsi is a recognizable brand, and carbonated soft drinks are often a staple item that brings customers in the door for multiple purchases. Retailers, therefore, cannot afford to forgo access to Pepsi products.

56. Walmart has market power as a retailer. With approximately 4700 locations, and a presence within ten miles of about 90% of the U.S. population, Walmart is massive in comparison

---

[2] *See* https://www.forbes.com/sites/errolschweizer/2025/12/18/how-walmart-and-pepsico-rigged-prices-and-supercharged-food-inflation/, last accessed December 22, 2025.

[3] *See* https://ilsr.org/article/independent-business/walmarts-monopolization-of-local-grocery-markets/, last accessed December 22, 2025.

[4] A common measure of concentration in antitrust economics, used by regulators including the Department of Justice and Federal Trade Commission. Under the current Department of Justice merger guidelines, an industry is highly concentrated if the HHI, calculated by the sum of the squares of the percentage market share of the three largest firms, exceeds 1800.

to every other retailer, including national grocery chains. Walmart has a staggering share of some staple food items, accounting for *e.g.* more than 28% of all canned tuna sold in the U.S. Because of this outsized presence, Walmart is a critical distribution mechanism for most consumer food and beverage categories.

57. In particular, Walmart is Pepsi's largest customer and distributor, without which Pepsi revenues and market share in the already highly concentrated carbonated soft drink market would collapse. Walmart's market power is demonstrated by its ability to secure even from Energizer (with a market share in its market that far exceeded Pepsi) to agree to raise other customers' prices.

58. Walmart operates in intra-brand competition to sell Pepsi at retail, *i.e.* Walmart sells the same Pepsi products that other retailers sell, and Walmart competes on price to secure the consumers' business. However, Walmart is in inter-brand competition against other retailers, including grocers and small markets. Walmart competes to provide all or substantially all of the consumer's grocery needs, against national chain and local grocery providers. Walmart also competes with small markets to offer ready-to-drink beverages and ready-to-eat snacks. Walmart can and does use agreements with producers to raise the cost of name-brand products, secured through its market power, to avoid competing on price, not only intra-brand for each product, but inter-brand against retailers such as grocers and small markets. Because Walmart agrees with producers to raise other retailers' cost, Walmart avoids either having to (a) lower its own margin to compete on prices against other retailers; or (b) innovating and offering better or different wares and shopping experiences than competing stores. Plaintiff and the Class are injured by Walmart's exercise of market power.

## IV. The Robinson-Patman Act ("RPA")

59. In 1936, Congress passed the Robinson-Patman Act ("RPA") to help level a playing field that favored chain stores and other large enterprises over small businesses. The law prohibits price discrimination and other ways that large businesses may gain an unfair advantage. Section 2(d) of the RPA generally prohibits sellers of products or commodities from granting advertising and promotional allowances to their customers unless the same allowances are available to all competing customers on proportionally equal terms. Section 2(e) of the RPA generally prohibits sellers from furnishing services or facilities connected with the processing, handling, sale, or offering for sale of commodities upon terms not accorded to all purchasers on proportionally equal terms. Together, Sections 2(d) and 2(e) are intended to prevent sellers from evading prohibitions on price discrimination by using other methods, like promotional allowances or services, to favor large customers over smaller businesses.

## V. Section 5 Of the Federal Trade Commission Act

60. Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anti-competitive conduct. *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

61. Since Section 5 of the FTC Act was passed, the FTC has explained that "the text, structure, and history of Section 5 reaches more broadly than the antitrust laws."[5]

62. The FTC has found "price discrimination claims such as knowingly inducing and receiving disproportionate promotional allowances" to be violations of Section 5 of the FTC Act.[6]

---

[5] https://www.ftc.gov/system/files/ftc_gov/pdf/P221202Section5PolicyStatement.pdf, pg 2.
[6] *Id.* at 14.

63. Pepsi's practices favoring Walmart over smaller retailers constitute unfair methods of competition under the Federal Trade Commission Act.

**VI. The FTC's January 2025 Action Against Pepsi**

64. On January 23, 2025, the FTC took action against Pepsi for allegations that are substantially similar to this complaint. *Federal Trade Commission v. PepsiCo, Inc.*, 1:25-cv-00664-JMF (S.D.N.Y. 2025) ("FTC Compl."). While redacted from the publicly-filed complaint, the retailer in question is widely understood to have been Walmart.[7]

65. In this action, the FTC found that the aforementioned conduct constitutes "unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45." FTC Compl. ¶ 81. The FTC also found that this conduct "harms consumers who shop at [non-Walmart] retailers by forcing them to pay higher prices for Pepsi products." *Id.* ¶ 17.

66. Similarly, the FTC found that Pepsi's conduct also violated the RPA. *Id.* ¶¶ 2, 72-76.

**CLASS ALLEGATIONS**

67. Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), equitable and injunctive relief, on behalf of the following Class:

> All persons and entities who purchased Pepsi products indirectly from one or more Defendant, or from any division, subsidiary, predecessor, agent, or affiliate of such Defendant, at any time during the period of January 1, 2020 ("Class Period") until Defendants' unlawful conduct and its anticompetitive effects cease to persist (the "Class").

68. Plaintiff also brings this action on behalf of himself and as a class of purchasers from the Indirect Purchaser States under Rule 23(a) and (b)(3), seeking damages pursuant to state

---

[7] *See* https://www.cnn.com/2025/01/17/business/pepsi-walmart-ftc-prices, last accessed August 4, 2025.

antitrust and consumer protection laws as well as common law unjust enrichment on behalf of the following class:

> All persons and entities in Indirect Purchaser States who purchased Pepsi products indirectly from one or more Defendant, or from any division, subsidiary, predecessor, agent, or affiliate of such Defendants, at any time during the period of January 1, 2020 ("Class Period") until Defendants' unlawful conduct and its anticompetitive effects cease to persist (the "Damages Class").

69. The "Indirect Purchaser States," for purposes of this Complaint, include Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

70. The following persons and entities are excluded from the above-described proposed Class:

(a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b) All governmental entities;

(c) All Counsel of Record; and

(d) The Court, Court personnel, and any member of their immediate families.

71. The Class is so numerous as to make joinder impracticable. Plaintiff does not know the exact number of Class members because such information is presently in the exclusive control of Defendants. Plaintiff believes that due to the nature of the industry there are likely, at a minimum, hundreds of thousands of Class members in the United States and its territories.

72. Common questions of law and fact exist as to all members of the Class. Plaintiff and the Class were injured by the same unlawful scheme, Defendants' anticompetitive conduct

was generally applicable to all members of the Class, and relief to the Class as a whole is appropriate. Common issues of fact and law include, but are not limited to, the following:

(a) Whether Defendants exchanged competitively sensitive information;

(b) Whether Defendants engaged in a combination or conspiracy to fix, raise, maintain or stabilize prices for the Products;

(c) The duration of the conspiracy alleged herein and the acts performed by Defendants in furtherance of the conspiracy;

(d) Whether such combination or conspiracy violated the federal antitrust laws;

(e) Whether the conduct of Defendants, as alleged in this complaint, caused injury to the Plaintiff and other members of the Class;

(f) Whether Defendants caused Plaintiff and the Class to suffer damages in the form of overcharges on the Products;

(g) The appropriate class-wide measure of damages; and

(h) The nature of appropriate injunctive relief to restore competition in the Product market.

73. Plaintiff's claims are typical of the claims of Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' unlawful conduct in that they paid artificially inflated prices for the Products.

74. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with and typical of, and not antagonistic to, those of the other members of the Class.

75. Plaintiff has retained counsel with substantial experience litigating complex antitrust class actions in myriad industries and courts throughout the nation.

76. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including issues relating to liability and damages.

77. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action. Moreover, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

78. Plaintiff knows of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## FIRST CLAIM FOR RELIEF
## Violation of Section 1 of the Sherman Act
## 15 U.S.C. § 1, §3

79. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

80. Defendants violated 15 U.S.C. Sections 1 and 3 by entering into and/or enforcing an unreasonable agreement in restraint of trade. More specifically, Pepsi agreed with Walmart to fix, increase, inflate, or stabilize prices of Pepsi's carbonated soft drinks.

81. The agreement reached by Defendants eliminated intra-brand price competition by artificially raising to supracompetitive levels the price of Pepsi carbonated soft drinks through every retail outlet except Walmart.

82. The agreement reached by Defendants also reduce inter-brand competition between Walmart and other retail outlets for carbonated soft drinks, including grocers and small markets.

83. Defendants' agreements violated the "Rule of Reason."

84. Each Defendant's market power was enhanced by the unlawful agreement. Pepsi was able to raise wholesale prices for its products, while Walmart was able to ensure that it would be the lowest priced retailer of Pepsi products without sacrificing its own margin. Defendants' Scheme had substantial price effects in the market for soft drinks and therefore on Pepsi soft drinks. Defendants' agreement increased the wholesale price of Pepsi soft drinks substantially, which wholesale increases were paid by Plaintiff and the members of the Class.

85. There is no procompetitive justification for Defendants' Scheme. Resale price maintenance nearly always unlawful when, as here, it is used by a dominant distributor or retailed to reduce intra-brand competition for a brand, thereby preventing other retailers from competing against the dominant retailer or distributor on price. Here, Walmart has a history of reaching agreement to have the lowest wholesale effective cost, and therefore without sacrificing its own margins the lowest retail price, for certain goods. As a dominant retailer, Walmart has used this agreement to thwart price competition among retailers and keep prices at supracompetitive levels, which is not justified by the Rule of Reason as applied to resale price maintenance.

86. Pro-competitive justifications for resale price maintenance begin with the manufacturer and travel through the need to ensure an enhanced margin to maintain a luxury product, for example for specialty products whose brands benefit from knowledgeable sales staff and value-added retail environments (such as performance cars that benefit from capable test drivers to demonstrate the product's capabilities, or equipment requiring installation). In such circumstances, a low-price intrabrand seller could benefit as a free rider from the more

sophisticated seller's cost. No such circumstances are present in the market for carbonated soft drinks.

87. Therefore, there are no free-rider justifications for the challenged agreements.

88. As a result of Defendants' Scheme, prices for Pepsi soft drinks to every retailer in the country except Walmart were inflated above competitive levels in the United States.

89. As a result of Defendants' Scheme, Plaintiff and members of the Class have been injured in their businesses and property in that they have paid more for Pepsi soft drinks than they otherwise would have paid in the absence of that conduct.

90. Walmart has done this before and appears likely to do it again. Plaintiff and Class Members seek injunctive relief preventing Walmart from reaching agreement with any retailer that increases wholesale effective prices to other retailers in a way not applicable to Walmart. Plaintiff and the Class also seek attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Violations of**
**State Antitrust Laws**

91. Plaintiff repeats the allegations set forth in Paragraphs 1 to 78, above, as if fully set forth herein.

92. On account of the combination, conspiracy, or agreement to unreasonably restrain trade in the market for Pepsi, Defendants have violated, and Plaintiff and members of the Class are entitled to relief under, the antitrust laws of the states of Arizona, California, Colorado, Connecticut, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, as well as the District of Columbia, as follows:

a. Ariz. Rev. Stat. Ann. §§ 44-1403, *et seq.*;

b. Cal. Bus. Code §§ 16700, *et seq.*;

c. Colo. Rev. Stat. § 6-4-101, *et seq.*;

d. Conn. Gen. Stat. §§ 35-27, *et seq.*;

e. D.C. Code §§ 28-4503, *et seq.*;

f. Haw. Rev. Stat. §§ 480-2, 480-9, *et seq.*;

g. 740 Ill. Comp. Stat. §§ 10/3, *et seq*.;

h. Iowa Code §§ 553.5, *et seq.*;

i. Kan. Stat. Ann. §§ 50-112, *et seq.*;

j. Me. Rev. Stat. Ann. 10 §§ 1102, *et seq.*;

k. MD Code Ann., Com. Law, §§ 11-204, *et seq*.;

l. Mich. Comp. Laws Ann. §§ 445.773, *et seq.*;

m. Minn. Stat. §§ 325D.52, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*;

n. Miss. Code Ann. §§ 75-21-3, *et seq.*;

o. Neb. Rev. Stat. §§ 59-802, *et seq.*;

p. Nev. Rev. Stat. Ann. §§ 598A.060, *et seq.*;

q. N.H. Rev. Stat. Ann. §§ 356:3, *et seq.*;

r. N.M. Stat. Ann. §§ 57-1-2, *et seq.*;

s. N.Y. Gen. Bus. Law § 340;

t. N.C. Gen. Stat. §§ 75-2.1, *et seq.*;

u. N.D. Cent. Code Ann. §§ 51-08.1-03, *et seq.*;

v. Or. Rev. Stat. §§ 646.730, *et seq.*;

w. P.R. Laws Ann. tit. 10 §§ 258, *et seq.*

x. R.I. Gen. Laws §§ 6-36-5, *et seq.*;

y. S.D. Codified Laws §§ 37-1-3.2, *et seq.*;

z. Tenn. Code Ann. §§ 47-25-101, *et seq.*;

aa. Utah Code Ann. §§ 76-10-3104, *et seq.*;

ø. Vt. Stat. Ann. 9, §§ 2453, *et seq.*;

cc. Virginia Code §§ 59.1-9 *et seq.* (§ 59.1-9.5);

dd. W.Va. Code §§ 47-18-4, *et seq.*; and

ee. Wis. Stat. §§ 133.03, *et seq.*

93. Plaintiff and members of the Class have been injured in their business or property by reason of Defendants' antitrust violations alleged in herein. Their injuries consist of paying higher prices for Pepsi products than they would have paid in the absence of Defendants' conduct. These injuries are of the type the antitrust laws were designed to prevent and flow from Defendants' conduct unlawful.

94. Plaintiff and the proposed Damages Class seek damages and multiple damages as permitted by law for their injuries by Defendants' violation of the aforementioned statutes.

**THIRD CLAIM FOR RELIEF**
**Violations of State**
**Unfair and Trade Practices Laws**

95. Plaintiff repeats the allegations set forth in Paragraphs 1 to 78, above, as if fully set forth herein.

96. Defendants engaged in unfair competition and unfair/unconscionable or deceptive acts or practices in violation of the state consumer protection statutes identified below by entering into the combination, conspiracy, or agreement to unreasonably restrain trade in the market for Pepsi products.

97. To the extent deception is required under the state laws below, Defendants concealed the anticompetitive and unlawful nature of their combination, conspiracy, or agreement to unreasonably restrain trade in the market for Pepsi products.

98. Accordingly, consumers and other indirect purchasers of Pepsi products were induced into purchasing, and will continue to purchase, Pepsi products at inflated prices. Plaintiff and members of the Damages Class could not reasonably have avoided injury from Defendants' wrongful conduct. This injury is of the type the state consumer protection statutes were designed to prevent and directly flows from Defendants' unlawful conduct. Defendants' conduct occurred in connection with consumer transactions related to the availability and sale of Pepsi products.

99. Defendants have violated, and Plaintiff and members of the Damages Class are entitled to relief under, the Unfair Trade Practices and Consumer Protection Laws of the states of Arkansas, California, Connecticut, Florida, Idaho, Massachusetts, Missouri, Montana, New Mexico, New York, North Carolina, Rhode Island, South Carolina, Utah and Vermont, as well as the District of Columbia, as follows:

a. Ark. Code Ann.§§ 4-88-101, *et seq.*;

b. Cal. Bus. & Prof Code §§ 17200, *et seq.*;

c. Conn. Gen. Stat. §42-110a, *et seq.*;

d. D.C. Code §§ 28-3901, *et seq.*;

e. Fla. Stat. §§ 501.201, *et seq.*;

f. Idaho Code §§ 48-601, *et seq.*

g. Mass. Gen. Laws ch. 93A, *et seq.*;

h. Mo. Rev. Stat. §§ 407.010, *et seq.*;

i. Mont. Code Ann., §30-14-103, et seq., and §30-14-201, *et seq.*;

j. N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

k. N.Y. Gen. Bus. Law §§ 349, *et seq.*;

l. N.C. Gen. Stat. §§ 75-1, *et seq.*;

m. R.I. Gen. Laws §§ 6-13.1-1, *et seq.*;

n. S.C. Code Ann. §39-5-10, *et seq.*;

o. Utah Stat. §§ 13-11-1, *et seq.*; and

p. VT. Stat. Ann., tit. 9, §2451, *et seq*.

## FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**

100. Plaintiff repeats the allegations set forth in Paragraphs 1 to 78, above, as if fully set forth herein.

101. Alternatively, from the acts of Defendants as alleged above, the Defendants have been unjustly enriched at the expense of Plaintiff and members of the Class.

102. Through Defendants' actions in restrain of trade, the Defendants have artificially increased the price of Pepsi products paid by Plaintiff and members of the Class.

103. Defendants reaped from Plaintiff and members of the Class artificially high profits for Pepsi products.

104. Defendants have been unjustly enriched by retaining the artificially high profits for Pepsi products collected from Plaintiff and members of the Class.

105. The retention of these profits by the Defendants violates the fundamental principles of justice, equity, and good conscience and should be returned to Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and Class on all counts asserted herein;

(d) For an injunction preventing Walmart from reaching agreement with any retailer that increases wholesale effective prices to other retailers in a way not applicable to Walmart;

(e) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f) An award of statutory penalties to the extent available;

(g) For pre-judgment interest on all amounts awarded;

(h) For an order of restitution and all other forms of monetary relief; and

(i) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: February 12, 2026

Respectfully submitted,

*/s/Christopher D. Jennings*
Christopher D. Jennings
(AR Bar No. 2006306)
**JENNINGS & EARLEY PLLC**
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
T: (501) 255-8569
E: chris@jefirm.com

*Attorney for Plaintiff*